Kirk is 31 years of age, and on the 18th ulf., was arrested as a Conscript, by order of General Iloke, and sued out a writ of
 
 habeas corpus,
 
 claiming exemption as a Captain of the militia of Yadkin county.
 

 The return sets out that “ Kirk was arrested by order of General Hoke, by virtue of verbal orders from Gov. Yance to arrest the militia officers of the counties of Yadkin and "VFilkes as persons subject to the Conscription Act.”
 

 The act of Congress, 11th October, 1862, excepts “The officers judicial and executive of the Confederate and State Governments,” &c., except such State officers “ as the State may have declared, or may'hereafter declare by law to be liable to militia duty.” The legislation of the several States, in respect to the liability of State officers to militia duty, was not uniform : In some certain officers were liable, in others not; which caused the exemption act to be unequal in its operation. The Governor of Georgia claims that “ militia officers” could not by the act of Congress be made subject to conscription, being officers required for the due administration of the State Government.
 

 To meet this state of things, the exemption act was amended April 30, 1863, and it is provided “all State officers shall be exempted whom the Governor of any State may claim to have exempted, for the due administration of the Government and laws thereof; but this exemption shall not continue after the adjournment of the next regular session of the Legislature, unless such Legislature shall, -by law, exempt them from military duty in the provisional army of the Confederate States.” In pursuance of this act Gov. Yance claimed to have exempted the militia officers of this State, and they have been considered and treated as exempted, until. Kirk was arrested under the order of Gov. Yance, referred to in the return. The case depends on the validity and legal effect of that action on the part of the Governor.
 

 Mr.
 
 Dodge, for Capt. Kirk, insisted on the argument, that by the proper construction of the amended exemption Act, the Governor having claimed certain officers, the Act contemplated by the law was done, and the Governor in respect thereto
 
 *187
 

 functus officio,
 
 and the militia and other State officers, embraced in the claim, were
 
 ipso facto
 
 exempted, and this exemption continued until the adjournment of the next regular session of the Legislature. That it was not in the power of the Governor to open and shut, from time to time, at his pleasure, and make liable to conscription, persons who were exempted under the act of Congress and his claim in pursuance-thereof. He further insisted, should he be mistaken in this, that the Governor certainly had not the power to take away the exemption in respect to particular individuals of a class,, at his pleasure, leaving the other individuals of this class still exempted ; that he must act upon classes of State officers and could not reach individuals unless charges were preferred, and they were on trial, by á court martial, deprived of their offices. And more especially that he could not discriminate between the officers^f different counties by conscripting the officers of one or two and letting the officers of the other counties remain exempted. — That such power could not be conferred on one man, because it was against the genius of a free-Government and was the essence of despotism — “The one-man power.”
 

 Mr. Winston
 
 for the Confederate States, insisted, that by the proper construction of the Act, power wTas conferred on the Governor, to claim to have exempted from time to time, such State officers as he should think necessary for the due administration of the Government and laws thereof, and it was proper to give him an opportunity to try how many officers were necessary. — He could see nothing in the Act or in our form of Government requiring the Governor to exempt by classes, or restraining him from saying “ he no longer needed the services of this or that individual, or the officers of this or that county.” And that by Gpneral Order No. 6, 17th of May, 1863, the Governor had reserved to himself this power, which was like a power of revocation in a deed, which, one creating an estate under a power of appointment, thought proper to insert, in order to enable him to avoid the estate. And he insisted this “ power of revocation” made by the Governor was fit and proper to to enable him to exact prompt obedience on the part of his officers, as the matter could not
 
 *188
 
 be dealt with by a court martial. The clause in the order referred to, is as follows: “ Militia officers are hereby exempted from the operation of the Conscription Act so long as they yield prompt obedience to the orders issued from, this office. The services of refractory and negligent officers will not be considered as necessary for the due administration of the Government and laws of the State.”
 

 In reply,
 
 Mr. Dodge
 
 relied on General Order No. 13, 10th duly, 1803, in which certain State officers, among others, county solicitors, militia officers, the mayor and police of Bal-•eigh, Wilmington, &c., are set out as exempted, under the act of April 30, 1863, without qualification or “ power of revocation” as revoking General Order, No. 6, oven if the Governor had the right to add a qualification, or power of revocation, which he denied.
 

 I have given this sketch of the positions assumed by the counsel, as tending to elucidate the subject, and to aid me, in some measure, in setting out the ground of the conclusion to which I have come, that the order of the Governor does not, in law, have the effect of avoiding the exemption of Captain Kirk and the other militia officers of the counties of Yad-kin and Wilkes, which had been effected by the previous act of the Governor under the act of Congress, 30th April, 1863.
 

 The function of designating what officers are necessary for the due administration of the Government and law's of the State, is a matter of legislation, which belongs to the General Assembly, bnt, at the time, when it seemed fit in the wisdom of Congress to amend the exemption act, the Legislatures of the States were not in session, and the plan adopted by Congress was not to
 
 confer
 
 power on the Governor to exempt State officers; for the Governors derive their power from the Constitution and Laws of the States- and not from Congress, but, to make the operation of the Act of Congress depend on the action of tlie Governors in claiming certain State officers for the due administration and laws of the State. The legitimacy of this mode of legislation, by which the
 
 operation
 
 of a law is made to depend upon the act or election of
 
 one
 
 man or of a number of men, was at one time seriously questioned, and many grave considerations may be urged against it. The
 
 *189
 
 subject is discussed in
 
 Manly
 
 v.
 
 City of
 
 Raleigh,
 
 4
 
 Jones’ Eq. 370. The authorities are cited and it is held, the Legislature (and for like reasons, Congress) bas power to legislate in that way. Still, it is only resorted to when made necessary by peculiar circumstances, and the act should be construed strictly, so as not to carry it beyond the exigence of the circumstances which gave rise to it.
 

 I can see nothing in the Act of Congress which intimates an intention to put it in the power of the Governors, from time to time, to enlarge or contract the list of State officers claimed for the due administratian of the Government and laws of the State. On the contrary, the words used, plainly contemplated a single act on the part of the Governor, to wit: making a claim for the necessary State officers, which was to have the effect of exempting them. Indeed, the words, “ But this exemption shall not continue after the adjournment of the next regular session,” &c., are inconsistent with the notion that the Act was to be repeated from time to time.
 

 Mr. Winston
 
 conceded that it was not in the power of a Governor, after a State officer has been conscripted, to enlarge the clause so as to include such officer in the list of exempts. This being so, it is difficult to see, how the same words can have the effect to enable a Governor to curtail the claim, and exclude an officer from exemption. There is nothing in the Act to show that, in the opinion of Congress, it was either necessary or proper that the Governors should have an opportunity of “ experimenting” in regard to what State officers are required for the due administration of the Government and laws thereof. It was reasonable to presume the Governor possessed this knowledge, or could acquire it, by the perusal of the Acts of the Legislature then in force, which would enable them to take the action necessary to effect the exemption which was to continue until it could be known whether, in the opinion of the Legislature, any change in the law was called for.
 

 In-the other view of this case, there is much force in the objection urged by Mr. Dodge to the verbal orders of Gov. Yance to General Hoke, in¿reference to the militia officers of the counties of Yadkin and Wilkes'. It is, in my opinion,
 
 *190
 
 contrary to the genius of our free institutions to put it in the power of- any one man to say to a county solicitor, for instance, <£ do my pleasure, or I will send you to the Camp of instruction as a conscript,” or to the mayor and police at Ealeigh, “ each aud every one of you must act to please me, or I will send you all to Camp Holmes as conscripts,” or to the officers of the militia in Yadkin county, “ obey my orders promptly, and see to it, that.no one is refractory, for if so, I.will send not only him, but the whole of you, to Camp Holmes as conscripts.” Such a power might lead to oppression, and become dangerous to liberty. - There is no precedent to support it in the history of. any free people. So, according to a well settled rule of construction, it shall not be taken that it was the intention of Congress so to legislate as to enable the Govern- or to exercise such unlimited sway over the State officers. (See my opinion in the matter of Einley — next case.)
 

 The position of
 
 Mr. Winston,
 
 that supposing the act of Congress not to confer the power, Gov. Yance had in respect to the militia officers reserved it by General Order No. 6, is not tenable, and the analogy on which he replied, drawn from the doctrine of powers of appointment and revocation, in fact, ■overthrows his position. The party which exercises a power -of appointment, cannot create a power of revocation — one who makes an estate can annex a condition by which to defeat it; so, the
 
 maker
 
 of a power of appointment may, by the same instrument, make a power of revocation, and he is - the ■only one who can make it. According to this doctrine, it was necessary for Congress to make the power of revocation, which the argument assumes not to have been doné.
 

 But I do not attach much weight, either to order No. 6, or •order No. 13. The exemption was not effected by them, in fact. They presuppose and are predicated upon a prior action on the part of the Governor, by means of wdiich, the exemption had been effected and the part of order No. 6, relied on by
 
 Mr.
 
 Winston, as a power of revocation, must be considered as a matter m
 
 terrorem
 
 only — a rod held up to make the officers of the militia prompt in their obedience, and it.was superseded by order No. 13.
 

 It is considered that E.
 
 ~W.
 
 Kirk be forthwith discharged,
 
 *191
 
 with leave to go wheresoever he will. The costs to be taxed by the clerk of the Superior Court of Yadkin county, will be paid by Robert E. IToke. The clerk will file the papers in his office and give copies.
 

 R. M. PEARSON, C. J. S. C.
 

 November 7, 1863.